UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORA W.,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

Case No. C18-5615-MLP

ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by finding that Plaintiff did not meet or equal Listing 1.02 or Listing 8.04, rejecting the opinion of the testifying Orthopedic Medical Expert Dr. Hansen regarding Plaintiff's left upper extremity, rejecting or ignoring opinions by Plaintiff's treating physician Dr. Caulkin, and rejecting Plaintiff's testimony regarding the severity of her symptoms. (Dkt. # 12 at 1-2.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff was born in 1970, has a high school education, and previously worked a composite job as a grocery clerk and stock clerk at Safeway for twenty-four years. AR at 41-42, 55-65, 128, 141, 159, 688.

On March 11, 2014, Plaintiff applied for benefits, alleging disability as of September 7, 2013. AR at 31. Her date last insured is December 31, 2018. *Id*. at 33. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing. *Id*. Five separate hearings were scheduled relating to this application. Specifically, a hearing scheduled for March 3, 2016 was continued to allow the ALJ more time to review the evidence that was submitted by Plaintiff's advocate shortly before the hearing. *Id*. at 157-68. During a hearing held on May 17, 2016, Plaintiff and a Vocational Expert ("VE") both testified. *Id.* at 121-56. However, on October 18, 2016, a third hearing was scheduled to allow the ALJ to obtain supplemental testimony from a Medical Expert ("ME") regarding Plaintiff's orthopedic impairments. Although the ME appeared, the hearing was not held because the ME had not reviewed the DDS explanation by Dr. Drew Stevick dated November 27, 2014 and the ALJ wished for him to review that opinion prior to reaching his conclusions. *Id*. at 110-20. On February 14, 2017, a fourth hearing had to be rescheduled after the ME once again did not review the DDS explanation before the hearing. *Id*. at 97-109. Finally, a different ME, Dr. Hansen, participated in a fifth and final hearing on July 17, 2014. *Id*. at 51-96. The ALJ issued a decision finding Plaintiff not disabled on August 2, 2017. *Id*. at 28-43.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since September 7, 2013, the alleged onset date.

---

[1] 20 C.F.R. §§ 404.1520.

ORDER REVERSING AND REMANDING FOR
FURTHER ADMINISTRATIVE PROCEEDINGS -
2

> Step two: Plaintiff has the following severe impairments: dysfunction of the major joints, diabetes mellitus, asthma, obesity, essential hypertension, chronic infections of the skin or mucous membranes, peripheral neuropathy, affective disorders, and anxiety disorders.
>
> Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]
>
> Residual Functional Capacity: Plaintiff can perform sedentary work, except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk (with normal breaks) for a total of about 2 hours in an 8-hour workday. She can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. She can frequently balance, stoop, and crouch. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, and scaffolds. She can never squat. She should avoid concentrated exposure to extreme cold, extreme heat, hazards, and vibration. She can have occasional right overhead reaching and frequent right reaching in other directions. She can have no exposure to prolonged loud noises without medically approved ear protection. She should avoid even moderate exposure to fumes, odors, dusts, and gases. She is capable of simple routine work tasks and some detailed tasks with customary breaks and lunch. She would be off-task ten percent of the time.
>
> Step four: Plaintiff cannot perform past relevant work.
>
> Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 28-50.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

---

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Erred by Failing to Articulate Any Reasons for Rejecting the Medical Expert's Opinion that Plaintiff's Knee Impairment Equals Listing 1.02A

*1. Dr. Hansen's Hearing Testimony*

As noted above, five separate administrative hearings were held in this case before the ALJ considered the record to be complete enough to issue his decision. On two separate occasions, Plaintiff's hearing was continued to a later date because the testifying medical expert had failed to review the opinion of the non-examining DDS physicians prior to the hearing. Finally, during the fifth administrative hearing, board-certified orthopedic surgeon Jeffrey Hansen, M.D. testified regarding Plaintiff's numerous orthopedic impairments and gave an opinion regarding her resulting limitations.

First, Dr. Hansen noted that Plaintiff formerly had a right foot and ankle injury – specifically a ligament injury – in 2008 after she slipped off a curb. AR at 60. She ultimately underwent surgery to successfully repair the ankle joint, but he testified that there is some post-traumatic arthritis in that ankle and an exaggerated chronic pain response described in the record as "reflex sympathetic dystrophy" or "complex regional pain syndrome." *Id*. at 61.[3] He noted, "I think the ligament repair was successful, but she's left with an abnormal pain response in that foot and ankle which has pervaded the record. There is no place where it sounds like – like it went away." *Id*. at 63. In March 2015, Plaintiff was also diagnosed with chronic osteoarthritis in the ankle with a non-displaced lateral malleolus fracture. *Id*. at 63. Dr. Hansen explained that basically "that foot and ankle had continued to have some trauma, had surgery, had a fracture and has an abnormal pain response. It's a little hard to quantify that, but it's hard to quantify any pain condition." *Id*. at 63. He opined that "I believe based on the persistence of that condition in the record that it is at least significant as far as the amount of pain that occurs." *Id*. at 64.

Second, Dr. Hansen testified that Plaintiff sustained a distal radius fracture on the left wrist from a fall in the hospital, which resulted in surgery by Dr. Bare in November 2014. *Id*. at 64. He noted that a November 2016 CT scan documented arthritis in her distal radioulnar joint of the wrist, as well as carpal tunnel syndrome for which she ultimately underwent surgery. *Id*. at 64-66.[4]

---

[3] For example, Dr. Hansen testified that examination notes from the Peninsula Pain Clinic from September 24, 2013 noted edema medially and laterally around the ankle, and strength of dorsiflexion and plantar flexion were diminished. During that examination her range of motion was fairly intact but caused pain. AR at 62. Dr. Hansen noted that the results of this particular physical exam is repeated throughout the record, such as documentation of hyperesthesia, which is hyper sensitivity to light touch. *Id*. at 62.

[4] Dr. Hansen noted that he was basing his understanding of her wrist injuries on impressions from the treating providers, rather than the radiologist who read the CT scan. *Id*. at 66.

Perhaps most significantly for this case, Dr. Hansen opined that Plaintiff has osteoarthritis of both knees, including a history of knee arthroscopy bilaterally. AR at 66-67. He noted that x-rays document progressive osteoarthritis in Plaintiff's right knee, but subsequently "the left knee . . . [also] became more symptomatic." *Id*. at 67. Dr. Bare describes "laxity, tenderness, crepitus in the patellofemoral knee joint." *Id*. at 67. Dr. Hansen stated that "the bottom line is both knees have now advanced osteoarthritis as of 2017. It was moderately advanced in 2013. Both knees were injected [with cortisone] . . . on 2/20/2017." *Id*. at 68. Dr. Hansen opined that he agreed with Dr. Bares's statement on March 12, 2017 that "the only real solution is total knee replacement . . . [b]ut she is fairly young for a knee replacement. Especially . . . complicating is her overall weight. She has a chronic obesity issue, around 280 to 300 pounds throughout the entire record, and a history of a blood clot in that right leg or deep vein thrombosis with pulmonary embolism[.]" *Id*. at 68. When the ALJ asked Dr. Hansen to specify when he believed Plaintiff became so limited by her impairments, Dr. Hansen opined that by the time of Plaintiff's knee x-ray dated December 10, 2013, Plaintiff had "*fairly advanced arthritis of the right knee enough to equal that 1.02A* [sic] . . . there are similar findings in the left knee . . . somewhere around the end of 2013[.]" *Id*. at 76 (emphasis added).

With respect to Plaintiff's other alleged joint problems, Dr. Hansen noted that Plaintiff had "present[ed] to clinic with back pain," although Dr. Hansen did not "see any imaging or any real abnormality on exams. But again, the chronic foot and ankle problem on the right, bilateral knee arthritis gradually developing since about 2010 and advanced now in 2017, and then the residual of that left wrist fracture." *Id*. at 69. An x-ray showed "indisputable evidence" of "calcific deposit in the rotator cuff insertion," which is "chronic calcific tendonitis" of Plaintiff's right shoulder. *Id*. at 73-75. Finally, Dr. Hansen noted that she most likely has diabetic

neuropathy at least affecting her feet with numbness and pins and needle sensations in her feet, although the only way to confirm that is with nerve testing which was not in the record. *Id*. at 71.

Based on these impairments, Dr. Hansen opined that Plaintiff would be limited to standing and walking two hours at the most in an eight-hour day, lifting twenty pounds occasionally, lifting ten pounds frequently, and carrying ten pounds occasionally. *Id*. at 71-72. He explained that the only objective evidence in the record that can support these limitations is the x-rays and swelling and palpable tenderness around the knees and foot and ankle. *Id*. at 73. As a result of her shoulder tendonitis, "there is going to be a limitation in overhead and other reaching because of the chronic shoulder pain[.]" *Id*. at 73. Due to her left wrist problems, he opined that she was limited to occasional handling and frequent (rather than continuous) fingering and feeling. *Id*. at 79. He also opined that even if she had not been prescribed a cane, that is something that would be medically necessary. *Id*. at 80.[5]

The ALJ asserted that he afforded only "some weight" to Dr. Hansen's testimony. *Id*. at 40. Specifically, he gave "great weight to the portion of his opinion limiting the claimant to standing and walking for 2 hours as this is supported by the imaging results and physical evaluations throughout the record. I give less weight to the portion of his opinion finding that the claimant can only carry 10 pounds occasionally, as the physical examinations generally show her to have intact upper extremity strength." *Id*. The ALJ also adopted Dr. Hansen's opinion regarding Plaintiff's limited overhead reaching due to shoulder tendinitis. *Id*. However, the ALJ gave little weight to Dr. Hansen's opinion finding that Plaintiff was limited to occasional

---

[5] During the hearing, the ALJ asked Dr. Hansen about the opinion of the DDS non-examining physicians from 2014 in which, in the ALJ's words, "they come up with no manipulative restrictions, at least up through the date that they looked at the record which is near the end of 2014?" AR at 77. Dr. Hansen responded that "they really underestimate the problem," as they fail to acknowledge the severity of the knee arthritis or calcific tendonitis of the shoulder. *Id*. at 78.

ORDER REVERSING AND REMANDING FOR
FURTHER ADMINISTRATIVE PROCEEDINGS -
7

handling and frequent fingering and feeling with her left hand, because "treatment notes show that the claimant responded well to her carpal tunnel release and physical examination findings show some tenderness but good movement of the fingers." *Id*. In addition, the ALJ noted that Plaintiff had reported an ability to drive, play bingo, do arts and crafts and us a computer. *Id*. Finally, the ALJ rejected Dr. Hansen's opinion that Plaintiff requires a cane, as he only made this statement "upon questioning from the representative" and "treatment notes show that the claimant was only prescribed a cane after her original hearing when the fact that she had not been prescribed a cane was brought up." *Id*.

### 2. *The ALJ Did Not Provide Specific and Legitimate Reasons for Rejecting Dr. Hansen's Opinion that Plaintiff's Knee Impairment Equals Listing 1.02(A)*

It is a claimant's burden to demonstrate that her impairments meet, or are equivalent to, a Listing. *See Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5 (1987). If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *see also Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "The listings define impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original)). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is

not listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett,* 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526) (emphases in original).

It is undisputed that during the administrative hearing, board-certified orthopedic surgeon Dr. Hansen testified that Plaintiff's advanced arthritis in both knees was severe enough to equal Listing 1.02A. AR at 75-76. To satisfy the requirements of Listing 1.02, Plaintiff needs to establish that she suffers from a major dysfunction of one or more joints, resulting from any cause, that is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.02(A).

As to the definition of effective ambulation referenced in subsection (A), § 1.00(B)(2)(b) provides in relevant part:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities….
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, *but are not limited to,* the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as

> shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b) (emphasis added).

Plaintiff contends that the ALJ committed harmful error by completely failing to address Dr. Hansen's opinion that Plaintiff's knee impairment equals Listing 1.02(A) in his written decision. (Dkt. # 12 at 4 (citing AR at 75-76).) The ALJ only stated, in a conclusory fashion, that "the evidence does not demonstrate that the claimant has the degree of difficulty in ambulating as defined in 1.00B2b." AR at 34. Thus, although the ALJ apparently considered whether Plaintiff met the Listing (and concluded that she did not), the ALJ did not acknowledge Dr. Hansen's opinion that her knee impairment equals it.

The Commissioner responds that Plaintiff does not meet this Listing because "the record is clear that she could 'ambulate effectively' without 'serious interference' with her activities," which is one of the requirements to meet the Listing criteria. (Dkt. # 16 at 4.) The Commissioner also suggests that because Plaintiff does not walk with two canes, she cannot meet the Listing. Thus, the Commissioner asserts that "the ALJ reasonably concluded that she did not meet the criteria for Listing 1.02(A)." (*Id.*) The Commissioner subsequently argues that a remand for an award of benefits is not the appropriate remedy in this case, as "it is not clear whether Dr. Hansen was testifying that Plaintiff met one single criteria of 1.02A (advanced arthritis) or whether he believed that despite not meeting all of the criteria for the Listing, Plaintiff's impairments equaled it. That ambiguity must be resolved through remand." (*Id*. at 17.)

The Court agrees with the Commissioner's observation that Dr. Hansen's meaning was not entirely clear. As noted above, he testified that "at the end of 2013 she has fairly advanced arthritis of the right knee enough to equal that (sic) 1.02A," and "there are similar findings in the

left knee" such that by the end of 2013 the RFC that Dr. Hansen posed would be in effect. AR at 76. Dr. Hansen then noted that "her condition has worsened [even more] since then." *Id*. Regardless of Dr. Hansen's meaning, the ALJ should have addressed not only whether Plaintiff's knee impairment met the Listing, but whether it equals it. The ALJ committed harmful error by not addressing this aspect of Dr. Hansen's opinion at all.

On remand, the ALJ should also reevaluate his finding that Plaintiff's use of a cane is not medically necessary. Dr. Hansen is a board-certified orthopedic surgeon who the ALJ called to testify as a medical expert after delaying Plaintiff's hearing on multiple occasions to obtain expert testimony regarding the myriad of joint conditions reflected in Plaintiff's medical record. *Id*. at 59. In addition, the ALJ afforded "great weight" to the portion of Dr. Hansen's opinion finding that "Plaintiff was limited to standing and walking for 2 hours as this is supported by the imaging results and physical evaluations throughout the record." *Id*. at 40. The ALJ rejected Dr. Hansen's testimony finding that Plaintiff requires a cane because Dr. Hansen "did not include this in his original testimony, and only added it upon questioning from the representative." *Id*. This reason was not specific, legitimate, or supported by substantial evidence. There is no evidence that Dr. Hansen was biased or had any reason to respond to a question from a representative differently than he would to questions posed by the ALJ.[6] As the ALJ did not provide any reasons for rejecting Dr. Hansen's opinion regarding the severity of Plaintiff's ankle

---

[6] Similarly, the ALJ's statement that "the treatment notes show that the claimant was only prescribed a cane after her original hearing when the fact that she had not been prescribed a cane was brought up" relates to the ALJ's evaluation of Plaintiff's testimony rather than Dr. Hansen's. However, the Court notes that especially in light of Dr. Hansen's testimony that Plaintiff's knee condition continued to worsen significantly after 2013, the fact that Plaintiff was eventually prescribed a cane is not a clear and convincing reason for the ALJ to discount Plaintiff's testimony regarding the severity of her condition.

ORDER REVERSING AND REMANDING FOR
FURTHER ADMINISTRATIVE PROCEEDINGS -
11

and knee impairments, even affording it "great weight," he failed to provide legally sufficient reasons for finding that Plaintiff does not require a cane to walk.[7] The portions of Dr. Hansen's opinion that the ALJ declined to adopt all related to Plaintiff's upper extremities. *Id*.

Accordingly, this case must be remanded for the ALJ to reconsider whether Plaintiff's knee impairment meets or equals Listing 1.02(A). The ALJ should discuss the issue of whether Plaintiff meets the Listing in greater detail beyond making a conclusory finding that Plaintiff does not have "the degree of difficulty in ambulating as defined in 1.00B2b." AR at 34. If necessary, the ALJ should obtain further testimony from a medical expert regarding the question of whether, if Plaintiff does not meet the Listing, her combination of impairments nevertheless equals it. On remand, the ALJ should also consider whether Plaintiff's history of persistent skin infections with both extensive fungating and extensive ulcerating skin lesions meets or equals Listing 8.04, as Plaintiff alleges. (Dkt. #16 at 6.)

### B. On Remand, the ALJ Should Also Re-Evaluate Dr. Hansen's Opinion Regarding Plaintiff's Wrist Condition

As noted above, the ALJ rejected Dr. Hansen's opinion regarding Plaintiff's limitations as a result of her wrist conditions, such as his opinion that she is limited to occasional handling (and frequent fingering and feeling) with her left hand because (1) she responded well to carpal tunnel release; (2) physical examination findings showed tenderness, but good movement of her fingers; and (3) she reported an ability to drive, play bingo, do some arts and crafts, and use a computer. AR at 40.

---

[7] To the extent the Commissioner suggests that Plaintiff cannot meet the Listing because she was using one cane but not two, this argument is unpersuasive. The inability to walk without two canes was included in a non-exhaustive list of examples of ineffective ambulation, but is not a requirement to meet the Listing.

ORDER REVERSING AND REMANDING FOR
FURTHER ADMINISTRATIVE PROCEEDINGS -
12

As discussed at length above, Dr. Hansen testified that his opined limitations were not solely due to her carpel tunnel condition, but that Plaintiff has a "residual" of a wrist fracture with arthritis in the distal radioulnar joint that remains a RFC issue. *Id*. at 65. He later testified that she also has some triggering of her little index finger. *Id*. Without more, the ALJ's focus on Plaintiff's successful carpal tunnel surgery, without acknowledging Dr. Hansen's opinion that the primary basis of Plaintiff's wrist limitations stemmed from a prior wrist fracture rather than carpal tunnel syndrome, is not specific, legitimate, or supported by substantial evidence.

With respect to the ALJ's assertion that exam findings do not support the ME's exclusions, the Court notes that the ALJ fails to cite to any particular treatment note in support of this assertion. AR at 40. The ALJ must explain why the medical evidence that contradicts her decision was rejected. *See Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007). The ALJ does not acknowledge any of the exam findings in the record relating to Plaintiff's wrist, although there are many noting wrist swelling, decreased sensation, limited or painful range of motion, tenderness to palpation, limited grip strength, and positive Tinel's and Phalen's test. AR at 64-66, 695, 1390, 1456, 1460, 1467-68, 1657, 1733-36, 1753, 2029, 2084. Moreover, an abnormal CT scan revealed arthritic changes in the basal thumb joint. *Id*. at 64-66.

Finally, the ALJ rejected Dr. Hansen's opinion based on a finding that Plaintiff can perform certain activities such as drive a car, play bingo, do arts and crafts, and use a computer. AR at 40. However, it is not clear that Plaintiff performed these activities with such frequency that they are inconsistent with Dr. Hansen's opinion. Accordingly, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting this aspect of Dr. Hansen's opinion. This error was not harmless, because if the ALJ had accepted Dr. Hansen's testimony, Plaintiff would have been found disabled. The VE testified that sedentary jobs require

both hands to be productive. *Id*. at 94. Moreover, the three jobs cited by the ALJ (telephone order clerk, charge account clerk, and bench hand) require either frequent or constant handling. *Id*. at 43.[8] On remand, the ALJ should reevaluate Plaintiff's left wrist impairment, and obtain additional testimony from a medical expert, if necessary.

### C. On Remand, the ALJ Should Re-Evaluate the Opinions of Dr. Caulkin

Dr. Caulkin, Plaintiff's treating primary care physician, completed a medical source statement dated December 2013. AR at 688-689. The form completed by Dr. Caulkin notes that due to Plaintiff's multiple medical problems, including degenerative joint disease of the right knee and ankle and recurrent cellulitis infections secondary to type two diabetes, he does not believe that she is employable. *Id*. at 689. Specifically, he noted that "very frequent missed days make employment impractical." *Id.*

The ALJ erred by failing to discuss this opinion. *Id*. at 41. If the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" for doing so that are "supported by substantial evidence in the record." *Orn,* 495 F.3d at 632. The decision of an ALJ fails this test when the ALJ completely ignores or neglects to mention a treating physician's medical opinion that is relevant to the medical evidence being discussed. *See Cotton v. Bowen,* 799 F.2d 1403, 1408 (9th Cir. 1986).

In February 2016, Dr. Caulkin completed another form with regard to Plaintiff's limitations as a result of her medical conditions. AR at 1773-1777. He noted multiple limitations, including that Plaintiff should rarely grasp, turn, twist, and use her left hand for fine manipulation, and should occasionally grasp, turn, twist, and use her right hand for fine manipulation. *Id*. at 1776. He opined that she was limited to occasionally reaching with her both of her upper extremities. *Id*. He opined

---

[8] Telephone order clerk (DOT 209.567-014 (G.P.O.), 1991 WL 671794) and charge account clerk (DOT 205.367-014 (G.P.O.), 1991 WL 671715) require frequent handling; bench hand (DOT 715.684-026 (G.P.O.), 1991 WL 679344) requires constant handling. AR at 43.

that she would likely be absent more than three times per month. *Id*. at 1777. He also found that Plaintiff can sit, stand, and walk for less than an hour a day, and will need to periodically elevate her legs during the day. *Id*. at 1775.

The ALJ rejected this opinion because Dr. Caulkin's opinions "are not supported by his own treatment notes," although the ALJ does not cite to any particular treatment note or explain the basis for this finding. *Id*. at 41. The ALJ also reiterated his finding, discussed above with respect to Dr. Hansen, that Plaintiff can "ambulate independently" and the fact that she was not prescribed a cane until after her first hearing indicates that it is not medically necessary. *Id*. at 41. Finally, the ALJ asserts that he gave greater weight to "the objective findings in the imaging results and the physical evaluations throughout the record, which do not support the degree of impairment opined by Dr. Caulkin." *Id*. at 41. However, this statement is not specific and legitimate, as it is at odds with the ALJ's acknowledgment earlier in his written decision that objective imaging of Plaintiff's ankle and knees showed significant limitations "which do appear to cause her significant pain and limits her ability to stand and walk for extended periods of time." *Id*. at 39.

Accordingly, on remand, the ALJ should re-evaluate all of Dr. Caulkin's opinions, and provide legally sufficient reasons for rejecting each of them, should such a conclusion be warranted.

**D. On Remand, the ALJ Should Reevaluate Plaintiff's Testimony**

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 37. The ALJ states that "the longitudinal history of the treatment notes do not support the claimant's allegations of disabling impairment. The records are consistent with the claimant's testimony indicating that her most significant impairments are her orthopedic

impairments, which do appear to cause her significant pain and limits her ability to stand and walk for extended periods of time." *Id*. at 39. Elsewhere throughout the written decision, however, the ALJ repeatedly states that the record does not reflect that Plaintiff has "difficulty ambulating." This is internally inconsistent, and the Court finds that the ALJ cannot, on the one hand, acknowledge the objective evidence is consistent with Plaintiff's allegations regarding the impact of her knee and ankle impairments, but on the other hand, discount Plaintiff's testimony (and that of all her treating medical providers) due to a lack of evidence that Plaintiff has "difficulty ambulating." As noted above, the fact that Plaintiff was prescribed a cane after her first hearing, without more, is not a clear and convincing reason for finding that it must not be medically necessary, especially as there is substantial evidence in the record that Plaintiff's condition has worsened over time.

Because this case is being remanded for reconsideration of the medical evidence, and the ALJ's assessment of Plaintiff's testimony appears to hinge on whether Plaintiff's difficulty ambulating is as severe as she claims, the ALJ's evaluation of her testimony is also reversed and the issue remanded. After re-evaluating the medical evidence, the ALJ should reassess Plaintiff's testimony.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 19th day of April, 2019.

_____
MICHELLE L. PETERSON
United States Magistrate Judge